IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* ST. PAUL'S FOUNDATION, | ) ) ) | |
| Plaintiff-Relator, | ) ) | Case No. 3-24-cv-00750 |
| v. | ) ) | Judge Aleta A. Trauger |
| TIMOTHY WIPPERMAN, | ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM

Before the court is defendant Timothy Wipperman's Motion to Dismiss (Doc. No. 47) the Second Amended and Restated Complaint ("SAC") (Doc. No. 44). The defendant asserts that the SAC must be dismissed for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted. St. Paul's Foundation ("St. Paul's" or the "relator") opposes the motion in part. (Doc. No. 52.)

For the reasons set forth herein, the motion will be granted in part and denied in part.

## I. PROCEDURAL HISTORY AND FACTS

The relator initiated this *qui tam* action in June 2024 by filing a sealed Complaint, asserting claims on behalf of the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. The relator was granted leave to file a first Amended Complaint in July 2024. (Doc. Nos. 9–11.) On March 10, 2025, the United States filed its Notice of Election to Decline Intervention. (Doc. No. 19.) The case was unsealed, and the defendant was served. The relator, with leave of court, filed the SAC on June 17, 2025.

According to the allegations in the SAC, St. Paul's is a religious corporation formed in Delaware and based in Massachusetts. (SAC ¶ 6.) Wipperman is a Tennessee resident. (*Id.* ¶ 7.) Wipperman is familiar with St. Paul's because he was "a Catechumen and then baptized into the Orthodox Christian faith with the spiritual direction of Fr. Andrew Bushell, the Protos of St. Paul's Foundation" from 2012 through 2017, and he and his family benefited from "pastoral outreach" performed by St. Paul's. (*Id.* ¶¶ 15, 15(a).)

The SAC alleges, in a nutshell, that Wipperman fraudulently submitted an application for an Economic Injury Disaster Loan ("Application"), purportedly on behalf of St. Paul's,[1] to the United States Small Business Administration ("SBA") on September 25, 2020. (*Id.* ¶ 10.) The funds for this type of loan were made available through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which went into effect on March 27, 2020. (*Id.* ¶ 8.) Wipperman allegedly used Form No. 3245-0406, Rapid Intake Form, to submit his Application on line. (*Id.*) However, "[e]xcept for the identity and residential address of Defendant Wipperman, the entirety of the Application is fabricated." (*Id.*) Although the SAC does not actually spell this out, the court infers that Wipperman was not authorized by St. Paul's to submit a loan application on behalf of St. Paul's. St. Paul's alleges that, upon submission of the Application, Wipperman, as signatory, knowingly certified under penalty of perjury that the information in and submitted with the Application was true and correct to the best of his knowledge. (*Id.* ¶ 11.)

The SBA denied the Application by letter dated September 28, 2020. The denial letter states that the Application was denied because the SBA determined that "one or more items that

---

[1] The SAC does not actually state that Wipperman submitted the Application on behalf of St. Paul's, but this fact is apparent from the copy of the Application attached to the SAC. (*See* Doc. No. 44 at 19.)

were reviewed" during the underwriting process "caused the SBA to question the validity of certain information . . . submitted as part of [the] application." (Doc. No. 44 at 23.)

Two years later, on October 13, 2022, Bushell and Tracey Stockton, General Counsel to St. Paul's, were arrested in Massachusetts on suspicion of fraud "related to the receipt of CARES Act funds" during the COVID-19 pandemic, "among other claims." (SAC ¶ 17.) The federal criminal Complaint against them in the United States District Court for the District of Massachusetts ("Criminal Complaint") was ultimately dismissed "in the interests of justice," and neither Bushell nor Stockton was indicted. (*Id.*) However, St. Paul's alleges "upon information and belief" that "the fraudulent actions of Defendant Wipperman described herein contributed to the analyses giving rise to the [Criminal] Complaint, causing significant emotional and economic damage" to Bushell and St. Paul's. (*Id.*)

Based on these allegations, the SAC sets forth two distinct claims. Count I asserts that Wipperman violated the FCA by knowingly making false and fraudulent statements to the SBA in the Application, in violation of 31 U.S.C. § 3729(a)(1)(A) & (B). Count II asserts that Wipperman violated the Wire Fraud Act, 18 U.S.C. § 1343, by submitting the false and fraudulent Application on line as part of a scheme to defraud.

Wipperman now moves to dismiss the SAC. While categorically denying that he submitted the Application or engaged in any wrongdoing, he asserts that, even if the allegations in the SAC are accepted as true, the FCA claim in Count I is subject to dismissal based on the public disclosure bar contained in 31 U.S.C. § 3730(e)(4)(A). (Doc. No. 47 at 7.) He asserts that Count II must be dismissed for failure to state a colorable claim for relief, because the Wire Fraud Act is exclusively a federal criminal statute that does not provide a private cause of action. (*Id.* at 13.)

St. Paul's opposes the motion in part, arguing that the public disclosure bar does not preclude its FCA claim. However, the relator concedes that the Wire Fraud Act does not confer a private right of action and that the Wire Fraud Act claim should be dismissed. (Doc. No. 52 at 10.) Count II, therefore, will be dismissed without further discussion.

## II. LEGAL STANDARDS

The defendant asserts both that the Complaint fails to state a claim and must be dismissed under Federal Rule of Civil Procedure 12(b)(6) *and* that, through application of the public disclosure bar, the court lacks subject matter jurisdiction, under Rule 12(b)(1). The law is clear, however, that, "[a]fter the 2010 amendments to the FCA, the public-disclosure bar is no longer jurisdictional." *United States ex rel. Bryant v. Cmty. Health Sys., Inc.*, 24 F.4th 1024, 1036 (6th Cir. 2022) (citation omitted). Accordingly, Rule 12(b)(6) applies to motions to dismiss based on the public disclosure bar.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (2007). A complaint that "tenders 'naked assertions' devoid of 'further

factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). A court may also consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted).

### III. DISCUSSION

#### A. The FCA

The FCA "prohibits submitting false or fraudulent claims for payment to the United States, and authorizes *qui tam* suits, in which private parties bring civil actions in the Government's name." *U.S. ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 822 (6th Cir. 2021) (quoting *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 404 (2011)); *see also* 31 U.S.C. §§ 3729(a), 3730(b)(1).

While the FCA includes incentives to encourage relators to "bring[] suits for the common good," it also includes a public disclosure bar that is designed to discourage "opportunistic

plaintiffs." *Rahimi*, 3 F.3d at 822 (citations omitted); *see also* 31 U.S.C. § 3730(d)(1)–(2) (outlining financial incentives for *qui tam* plaintiffs); *id.* § 3730(e)(4)(A) (public disclosure bar).

The FCA's public disclosure bar, as amended in 2010, states in relevant part:

The court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media,

unless . . . the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). The Act defines "original source" as someone who (1) "prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based," or (2) has "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." *Id.* § 3730(e)(4)(B).

The Sixth Circuit applies a three-part test to determine whether the public disclosure bar precludes an "otherwise valid FCA claim." *Id.* at 823. Under this test, the court asks (1) whether there were "public disclosures from which fraud might be inferred" prior to the filing of the *qui tam* complaint; (2) "how closely related the allegations in the complaint are to those in the public disclosures"; and (3) "whether the *qui tam* plaintiff is nevertheless an original source of the information." *Id.* (citations omitted).

For purposes of step one, a disclosure is "public" under the statute, as relevant in this case, if it appears in "the news media" or in a "Federal criminal . . . hearing." 30 U.S.C. § 3720(e)(4)(A).

A "statement or allegation satisfies the inference-of-fraud element if 'the information is sufficient to put the government on notice of the likelihood of related fraudulent activity.'" *Rahimi*, 3 F.4th at 823 (quoting *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 512 (6th Cir. 2009))

At step two, under the 2010 amendments to the FCA, the court must assess "whether the allegations in the complaint are 'substantially the same' as those contained in the public disclosures." *Id.* at 826 (quoting *Maur*, 981 F.3d at 522). "If the court decides that there was public disclosure based on its analysis of the first two steps, the relator may proceed only if he qualifies as an "original source" of the information. *Id.* (citing 31 U.S.C. § 3730(e)(4)(A)–(B)).

### B. Was There Public Disclosure?

The original Complaint in this case was filed in June 2024. The defendant asserts that the "alleged fraud" was known to the government by this time, because the SBA had denied the Application based on the SBA's conclusion that the "validity of certain information" submitted as part of the investigation was "questionable." (*See* SAC Ex. 3, Doc. No. 44 at 23.)

In addition, he points to the arrests of Bushell and Stockton in October 2022 based on allegations that they were engaged in "fraud related to the receipt of CARES Act funds" and the relator's allegation that "the fraudulent actions of Wipperman . . . contributed to the analyses giving rise to the [Criminal] Complaint." (SAC ¶ 17.) The defendant also notes that Bushell's and Stockton's arrests and the fraud allegations against them were reported in the news. (*See* SAC Ex. 5, Doc. No. 44 at 41–43.)[2]

The relator argues that the submission of the Application to the SBA, coupled with the SBA's denial of the Application, does not qualify as "public disclosure" and that if it did, any time

---

[2] The defendant attaches additional documents to his motion that are not referred to in the SAC or central to its claims. The court declines to consider the materials outside the pleadings submitted by the defendant.

a bad actor submitted a fraudulent request for funds to the government and the government denies the request, that would qualify as public disclosure of the fraud. More particularly, he points out that these documents were not disclosed in the course of a "Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; [or] (2) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation," as required by 31 U.S.C. § 3730(e)(4)(A). The court agrees. This purported disclosure does not fall within the scope of § 3730(e)(4)(A)(1) or (2), not having been made in one of the specified arenas. The defendant's alleged submission of a fraudulent request for money from the government, which some branch of the government rejected, does not qualify as public disclosure all on its own.

The defendant also argues that the Criminal Complaint charging Bushell and Stockton and the underlying investigation that gave rise to those charges, which were widely reported in the media, together constitute public disclosure of fraud and that the allegations of fraud against Bushell and Stockton are "directly related to the allegations of fraud in the *qui tam* Complaint." (Doc. No. 47 at 11.) The defendant emphasizes the relator's allegation "upon information and belief" that "the fraudulent actions of Defendant Wipperman described herein contributed to the analyses giving rise to the [Criminal] Complaint." (Doc. No. 44 ¶ 17.)

While it seems clear that the criminal charges against Bushell and Stockton, which were reported in the media, may constitute "public disclosures from which fraud might be inferred," for purposes of first part of the Sixth Circuit's three-part test, *Rahimi*, 3 F.4th at 823, at the second step of the test, the court must consider whether the allegations in *this lawsuit* are "substantially the same" as those contained in public disclosures of Bushell's and Stockton's alleged fraud. *Id.* at 826. The court finds that they are not. Although the fraudulent schemes at issue in the criminal Complaint and in this lawsuit both involve CARES Act funds, the similarities stop there. The fraud

allegedly perpetrated by Bushell and Stockton involved "allegations of fraud related to the receipt of CARES Act funds." (SAC ¶ 17.) The fraud allegedly perpetrated by Wipperman involves fraud in submitting the Application for a loan under the CARES Act, not the receipt or use of such funds. More importantly, the perpetrators of the two schemes are different. The defendant has not pointed the court to any other case in which public allegations of fraud against actors 1 and 2 have been considered sufficiently related to allegations of fraud against actor 3 that a *qui tam* complaint based on *actor 3's* fraud will be subject to the public disclosure bar. In short, public disclosure of (alleged) fraud by Bushell and Stockton does not bar a *qui tam* action alleging fraud by Wipperman, because the allegations in this case are not based on the disclosure of the fraud allegedly committed by Bushell and Stockton. *Accord U.S. ex rel. Whipple v. Chattanooga-Hamilton Cnty. Airport Auth.*, 782 F.3d 260, 264 (6th Cir. 2015) ("To determine whether the public-disclosure bar applies, we consider, 'first whether there has been any public disclosure of fraud [through one of the specified channels], and second whether the allegations in the instant case are "based upon" the previously disclosed fraud.'" (quoting *Poteet*, 552 F.3d at 511)).

The defendant has not established that the public disclosure bar precludes this suit, and the court has no need to consider whether the relator qualifies as an original source.

## IV. CONCLUSION

For the reasons set forth herein, the Motion to Dismiss (Doc. No. 47) will be granted as to the Wire Fraud Act claim but denied as to the FCA claim.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge