# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* | ) | |
| **ST. PAUL'S FOUNDATION,** | ) | |
| | ) | |
| **Plaintiff-Relator,** | ) | |
| | ) | **Case No. 3:24-cv-00750** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **TIMOTHY WIPPERMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM and ORDER</u>

Before the court is defendant Timothy Wipperman's Amended/Correction Motion to Disqualify (Doc. No. 45), which plaintiff-relator St. Paul's Foundation ("St. Paul's") opposes (Doc. No. 53). For the reasons set forth herein, this motion will be granted.

## I.    BACKGROUND

The relator initiated this *qui tam* action in June 2024 by filing a sealed Complaint, asserting claims on behalf of the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* The relator was granted leave to file a first Amended Complaint in July 2024. (Doc. Nos. 9–11.) On March 10, 2025, the United States filed its Notice of Election to Decline Intervention. (Doc. No. 19.) The case was unsealed, and the defendant was served. The relator, with leave of court, filed the Second Amended Complaint on June 17, 2025. (Doc. No. 44, Second Am. Compl. ("SAC").)

St. Paul's is represented in this case by Tracey M.A. Stockton, a Massachusetts attorney admitted to practice in this court. The relator is a small, non-profit religious corporation. (SAC ¶ 6.) St. Paul's "Protos" is Fr. Andrew Bushell. (*Id.* ¶ 15(a).) Bushell allegedly served as defendant Wipperman's "spiritual director" from approximately 2012 to 2017. (*Id.* ¶ 15(a)–(c).) The SAC

alleges that, in September 2020, Wipperman, without authorization, submitted a false and fraudulent application for an Economic Injury Disaster Loan ("Application"), purportedly on behalf of St. Paul's,[1] to the United States Small Business Administration ("SBA") on September 25, 2020. (*Id.* ¶ 10.) The funds for this type of loan were made available through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which went into effect on March 27, 2020. (*Id.* ¶ 8.) Although the SBA denied the Application, St. Paul's, on behalf of the United States, asserts that Wipperman violated the FCA by knowingly making false and fraudulent statements to the SBA in the Application, in violation of 31 U.S.C. § 3729(a)(1)(A) & (B).

The SAC also alleges that in October 2022, Bushell and Stockton, as General Counsel to St. Paul's, were both arrested on allegations of fraud related to the receipt of CARES Act funds. (SAC ¶ 17 (citing Criminal Complaint, *United States v. Bushell*, No. 1:22-mj-4506-DHH (D. Mass. Oct. 11, 2022), ECF No. 1 (hereinafter "Criminal Complaint")).) The Criminal Complaint was ultimately dismissed "in the interests of justice" and neither Bushell nor Stockton was indicted, but St. Paul's alleges "upon information and belief" that "the fraudulent actions of Defendant Wipperman . . . contributed to the analyses giving rise to the [Criminal] Complaint, causing significant emotional and economic damage" to Bushell and St. Paul's. (*Id.*)

The Criminal Complaint was signed by, and based upon the Affidavit of, FBI Special Agent Chad Oakes. Criminal Complaint at 1. The Oakes Affidavit, attached as an exhibit to the Criminal Complaint, alleges among other things that Bushell and Stockton lived together; that together they operated several non-profit religious and business organizations for which Bushell was registered as the principal officer and Stockton as the registered agent; and that together they

---

[1] The SAC does not actually state that Wipperman submitted the Application on behalf of St. Paul's, but this fact is apparent from the copy of the Application attached to the SAC. (*See* Doc. No. 44 at 19.)

applied for and received CARES Act funds and loans by submitting fraudulent applications and then used those funds for personal and/or non-permitted purposes. *See generally* Affidavit, *United States v. Bushell*, No. 1:22-mj-4506-DHH (D. Mass. Oct. 11, 2022), ECF No. 1-3. The relator appears to be alleging that the fraudulent Application in *this case* contributed to the criminal charges against Bushell and Stockton.

In the present lawsuit, although no answer has been filed, defendant Wipperman denies submitting the Application. (*See* Doc. No. 47 at 2 n.3 (denying wrongdoing in this case "and specifically den[ying] submitting the loan application at issue").) He maintains that Stockton, as attorney of record for the relator, has intimate knowledge of St. Paul's affairs and, in particular, about the facts giving rise to the criminal investigation against both Bushell and Stockton herself, such that she is a necessary witness in this case. His motion implies that Bushell and/or Stockton may have been involved in the criminal conduct alleged in the Criminal Complaint and that they may have submitted the Application at issue in this case.[2] Wipperman also submitted a Declaration in support of the Motion to Disqualify in which he alleges that, after being introduced to Stockton by Bushell, he retained Stockton to handle "various corporate matters on [his] behalf and on behalf of [his] businesses" from approximately 2014 through 2019. (Doc. No. 45-1, Wipperman Decl. ¶¶ 3–5.) He alleges that Stockton is still attorney of record on one such matter and that he has not authorized Stockton to represent St. Paul's against him in this case. (*Id.* ¶¶ 7, 9.)

In support of his Motion to Disqualify, Wipperman argues that Stockton should be disqualified from representing St. Paul's in this matter under Tennessee Rules of Professional Conduct ("TRPC") 3.7(a) and 1.9, because (1) she is likely to be a necessary witness in this matter;

---

[2] The fact that criminal charges were dropped does not completely dispel the inference of wrongdoing by Bushell and Stockton, given the beyond-reasonable-doubt standard of proof applicable in criminal cases.

and (2) her representation of St. Paul's in a case adverse to Wipperman, a former client, creates a conflict of interest. (*See generally* Doc. No. 45.)

St. Paul's responds that TRPC 1.9 does not require Stockton's disqualification because Wipperman was never Stockton's client; instead, she represented Rezonant Music Publishing LLC, a business in which Wipperman held an interest. Second, she argues that she will not be a necessary witness in this case, because the only testimony she would be able to provide would be relative to an uncontested issue—the existence of the fraudulent Application allegedly submitted by Wipperman. St. Paul's maintains that Stockton's knowledge of the relator's corporate affairs is not at issue here. Rather, according to the relator, the only contested issue is whether Wipperman submitted the fraudulent Application, and Stockton has no knowledge concerning that contested issue. (*See generally* Doc. No. 53.) The relator also contends that disqualification of Stockton would "work substantial hardship" on St. Paul's. (*Id.* at 6; *see also* Doc. No. 53 at 18, Stockton Aff. ¶ 24.)

The relator's Response in opposition to the defendant's Amended/Correction Motion to Disqualify was filed before the court vacated its prior order waiving the requirement of local counsel and before the relator had secured local counsel. (*See* Doc. No. 55.) St. Paul's has now secured local counsel. (*See* Doc. Nos. 56, 57.)

## II. DISCUSSION

Pursuant to this court's local rules, all lawyers admitted to practice in this court are bound by the Tennessee Rules of Professional Conduct. L.R. 83.00.

TRPC 3.7 states, in pertinent part:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless:

    (1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

TRCP 3.7(a). A "necessary witness" is one whose testimony will be "relevant, material, and unobtainable elsewhere." *Abdi v. Infidels, LLC*, No. 3:24-cv-00230, 2025 WL 394971, at \*2 (M.D. Tenn. Feb. 4, 2025) (Crenshaw, J.) (quoting *Tenn. Bank & Tr. v. Lowery*, No. 3:11-0984, 2012 WL 4849968, at \*1 (M.D. Tenn. Oct. 11, 2012)); *State v. Spears*, No. E2017-01836-CCA-R9-CD, 2018 WL 3528315, at \*4 (Tenn. Crim. App. July 23, 2018) (applying same definition). Under the Federal Rules of Evidence, "relevant" evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," and that fact is "material" in the sense that it is "of consequence to the determination of the action." Fed. R. Evid. 401; *see also Mullett v. Consol. Aluminum Corp.*, 23 F.3d 407 (6th Cir. 1994) ("Under Federal Rule of Evidence 401, 'proffered evidence must be relevant to prove a proposition that is itself "of consequence to the determination of the action," *i.e.*, material to the lawsuit.'" (quoting *United States v. Fountain*, 2 F.3d 656, 667 n. 6 (6th Cir. 1993)).[3] Rule 3.7 makes it clear that any lawyer who is "likely to be a necessary witness" may not represent a party in a case *unless* one of the three exceptions applies. *Accord Eon Streams, Inc. v. Clear Channel Commc'ns, Inc*., No. 3:05-CV-578, 2007 WL 954181, at \*3 (E.D. Tenn. Mar. 27, 2007).

Generally, "any doubts about whether a lawyer may be called as a witness should be resolved in favor of the lawyer being permitted to testify and against the lawyer acting as advocate." *Id.* at \*4 (citing *Whalley Dev. Corp. v. First Citizens Bancshares, Inc.*, 834 S.W.2d 328, 331 (Tenn. Ct. App. 1992)). Moreover, although TRCP 3.7 provides only that an attorney who

---

[3] In other words, to be relevant, evidence must also be material.

may be a necessary witness *at trial* may not act as an advocate at that trial, "the Sixth Circuit has long held that, 'when an attorney knows that he will or ought to be called as a witness, he should withdraw from representation.'" *Id.* at *5 (quoting *Waltzer v. Transidyne Gen. Corp.*, 697 F.2d 130, 134 (6th Cir. 1983)). The Sixth Circuit has also held that the term "trial" as used in the ethics rules should not be narrowly interpreted, but may extend to the whole case, particularly including discovery. *See Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 716 (noting that, under the Federal Rules of Civil Procedure, "the ultimate 'trial' is connected as a seamless web to the ascertainment of issues at the pretrial proceedings, and particularly to the discovery depositions"). Consequently, a trial court generally has "discretion to determine to what proceedings the disqualification would apply." *Id.* (holding that the trial court in that case, "having decided to disqualify, did not "abus[e its] discretion in applying [disqualification] to the whole case"); *see also Howard v. Bd. of Educ.*, 70 F. App'x 272, 2003 WL 21518725, at *4 (6th Cir. July 1, 2003) (finding that the trial court did not abuse its discretion in disqualifying plaintiff's attorneys several months before trial where defendant had indicated it would call plaintiff's counsel as witnesses); *Eon Streams*, 2007 WL 954181 at *5 ("A court has the power to disqualify an attorney for pretrial and trial proceedings.").

Wipperman asserts that Stockton is a necessary witness and that her testimony does not relate only to an uncontested issue. More specifically, as noted above, the defendant denies engaging in any fraudulent conduct. Based on the criminal charges against Stockton and Bushell, as alleged in the SAC, Wipperman asserts that Stockton, as St. Paul's long-time attorney, is "an important witness in this case" whose "testimony will be relevant to the alleged fraudulent activity by St. Paul's, her arrest and her alleged involvement in the fraud, her representation of St. Paul's, the damages alleged in the Complaint, and the ways in which St. Paul's may have come into

possession of Mr. Wipperman's personal information," at least some of which was used in the Application at issue in this case. (Doc No. 45 at 3.) Wipperman, that is, implies that Stockton, or Stockton acting on behalf of Bushell or St. Paul's, submitted the fraudulent Application that is the subject of this lawsuit and, therefore, that Stockton's testimony will be relevant to the contested issue of whether Wipperman submitted the Application. He states that Stockton is now "representing St. Paul's in a lawsuit focused on the same nucleus of operative facts that she was involved in," and that she has "unique, personal knowledge" of St. Paul's affairs (*id.*)—that is, information that cannot be obtained from other witnesses.

The relator does not dispute that Stockton may be a necessary witness, but it contends that the only testimony Stockton would be able to offer would relate to an "uncontested issue"—"the existence of the Fraudulent Application." (Doc. No. 53 at 5.) The relator contends that there is no dispute that this document exists and has Wipperman's name on it and that Stockton's testimony would be necessary only to introduce it into evidence. Stockton, for her part, denies having any relevant, discoverable information about whether Wipperman submitted the Application. (Doc. No. 53 at 7; *see also* Stockton Aff. ¶ 22 ("The only testimony I am able to give relative to the Fraudulent Application is that it exists and it bears the name and address of Defendant Wipperman. Each of these matters are uncontested and discernible to anyone viewing the Fraudulent Application.").) She also asserts that she had "no knowledge of the Fraudulent Application until more than two (2) years *following* its submittal to the SBA." (Doc. No. 53 at 8; *see also* Stockton Aff. ¶ 6 ("I have committed no crimes.").) The relator opposes the defendant's attempt to "point the not too subtle finger at Relator[4] and/or Ms. Stockton" instead of "seek[ing] the truth about the

---

[4] The relator is St. Paul's, not Bushell, but the court filings submitted by St. Paul's tend to conflate the two.

Fraudulent Application." (Doc. No. 53 at 6.)

Although the issue presents a close call, the court finds that Stockton is likely to be a necessary witness in this case and that her potential testimony does not concern only the relator's discovery of the fraudulent Application but the contested issue of *who* submitted the Application. It is apparent that Wipperman will need, at a minimum, to depose Stockton regarding her knowledge of St. Paul's activity that gave rise to the criminal investigation. The relator is correct that Wipperman appears to be pointing the finger at Stockton and/or Bushell—but the SAC itself included allegations about the criminal investigation and made those allegations relevant and material to the claim against Wipperman and to the relator's potential damages. Wipperman has made them relevant to his defense as well. The fact that Stockton felt compelled to submit her own Affidavit in response to the Motion to Disqualify—denying that she had prior knowledge of the Application and denying that she engaged in any wrongdoing in connection with the Application or with the CARES Act funds as alleged in the Criminal Complaint against Bushell and Stockton— effectively corroborates the determination that she is in possession of relevant evidence. That is, Stockton's testimony that she did not submit the Application will be relevant and material to the question of whether Wipperman did. And only Stockton can testify about her own involvement or lack of involvement in the underlying fraud. In sum, Stockton's testimony in this case about the underlying criminal investigation and her involvement in the fraudulent activity at issue in this case is "relevant, material, and unobtainable elsewhere." *Abdi*, 2025 WL 394971, at *2.

Although it is early in the proceedings, the court finds that Stockton should be disqualified from representing the relator in this case *unless* one of the exceptions set forth in TRCP 3.7(a)(1) through (3) applies. She argues that subsection (1) applies because she is only competent to testify about an uncontested issue—whether the Application was submitted in Wipperman's name. As set

forth above, however, her testimony is relevant to the question of *who* submitted that Application as well, not merely *that* it was submitted.

The relator also argues that disqualification of Stockton would work a substantial hardship on it, under TRCP 3.7(a)(3). However, that argument, and Stockton's Affidavit regarding her efforts to procure local counsel, were submitted before the court vacated its waiver of the requirement that St. Paul's obtain local counsel and before St. Paul's successfully retained competent local counsel. The court finds that the hardship arguments have now been rendered moot. Because Stockton has not shown that an exception applies, the court finds that she should be disqualified from continuing to represent St. Paul's on the basis that she is likely to be a necessary witness at trial—including discovery proceedings—in this case. TRCP 3.7(a).

The court does not reach the question of whether Stockton should be disqualified under TRCP 1.9 based on Wipperman's allegations that Stockton "handled various corporate matters on [his] behalf and on behalf of [his] businesses" from 2014 through approximately 2019. (Wipperman Decl. ¶ 5.)

## III. CONCLUSION AND ORDER

For the reasons set forth herein, the defendant's Amended/Correction Motion to Disqualify (Doc. No. 45) is hereby **GRANTED**, and Tracey Stockton is **DISQUALIFIED** from representing St. Paul's in this case. However, nothing in this Order "bar[s] [Stockton] from rendering the . . . assistance that is in [her] power" to local counsel. *Gen. Mill Supply Co.*, 697 F.2d at 716.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge